# In the United States Court of Federal Claims

No. 13-1011C
(Filed: September 15, 2016)

|  |  |
|---|---|
| RON ESTES, Treasurer of the State of Kansas,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>　　　　　　Defendant. | Keywords: Motion to Compel; Attorney-Client Privilege; Work-Product Privilege; Deliberative Process Privilege. |

*J. Brett Milbourn*, Walters Bender Strohbehn & Vaughn, P.C., Kansas City, MO, and *David C. Frederick*, Kellogg, Huber, Hansen, Todd, Evans & Figel, P.L.L.C., Washington, DC, for Plaintiff. *Scott Gates*, General Counsel, Office of the Kansas State Treasurer, Of Counsel.

*Eric P. Bruskin*, Senior Trial Counsel, Civil Division, U.S. Department of Justice, Washington, DC with whom were *Steven J. Gillingham*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, and *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General. *Albert S. Iarossi*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, and *Theodore C. Simms, II*, Attorney-Advisor, Bureau of the Fiscal Service, U.S. Department of the Treasury, Washington, DC, Of Counsel.

## OPINION AND ORDER

**KAPLAN, Judge**

　　Before the Court is Plaintiff's motion to compel the government to produce certain documents it asserts are covered by the deliberative process privilege, the attorney-client privilege, the attorney work-product privilege, or a combination of the three. The Court has reviewed the majority of the withheld documents <u>in camera</u>. For the reasons given below, Plaintiff's motion is **DENIED**.

## BACKGROUND

　　On December 18, 2015, the Court issued an Order permitting "a brief period of limited discovery" in this case. ECF No. 51. Discovery was to be "limited to information relevant to the history of the Department of Treasury's recordkeeping, registration, and redemption practices regarding the types of U.S. savings bonds involved in this case,"

along with "information regarding the nature of how the Department's relevant savings bond records are catalogued and may best be searched." Id.

Soon after, on January 6, 2016, Plaintiff (Kansas) served requests for document production on the government. See Pl.'s Mem. in Supp. of Pl.'s Mot. to Compel (Pl.'s Mem.) at 5, ECF No. 70. Between February 12, 2016, and May 19, 2016, the government responded to these requests on a rolling basis. See id. at 5–8.

According to the government, in gathering and reviewing documents responsive to Kansas's requests, it determined that certain responsive documents were potentially privileged under the deliberative process privilege, the attorney-client privilege, the attorney work-product privilege, or a combination of the three. See Def.'s Resp. in Opp'n to Pl.'s Mot. to Compel (Def.'s Resp.) at 5–7, ECF No. 71. Acting under delegated authority, the Assistant Commissioner for the Treasury Securities Service, Dara Seaman, reviewed the potentially privileged documents and executed two declarations, one on February 11, 2016, and one on April 27, 2016, in which she asserted the deliberative process privilege over seventy-four documents. Id. at 5–6; see also Def.'s Resp. Exs. B–C.

In the course of the rolling document production, the government provided Kansas with privilege logs identifying and describing the documents over which it asserted privileges. See Def.'s Resp. at 5–7; Pl.'s Mem. Exs. 3, 4, 7. On May 19, 2016, the government provided additional information regarding fifty-three of the documents in an email to Plaintiff's counsel. See Pl.'s Mem. Ex. 11.

On June 16, 2016, Kansas moved to compel production of the withheld documents. Pl.'s Mem. at 1–4. As discussed in more detail below, Kansas argues that the government did not adequately describe several documents over which it seeks to assert the attorney-client and/or work-product privileges; that it did not take the appropriate procedural steps in asserting the deliberative process privilege; and that the deliberative process privilege, which is a qualified privilege, should be overcome here in any event. Id. at 8–20.

In order to assess the government's claims of privilege, the Court reviewed in camera all of the documents the government withheld or redacted for which it asserted the deliberative process privilege as at least one of the grounds for non-disclosure. Based on that review, the privilege logs, and the briefs filed in this matter, Kansas's motion is **DENIED**.

## DISCUSSION

I.  **Attorney-Client and Work-Product Privileges**

In this case, the government claimed deliberative process privilege for all but five of the documents it withheld. Those five documents included four documents over which the government asserted only the attorney-client privilege, and one document over which the government asserted both the attorney-client and work-product privileges. See Pl.'s Mem. at 20–23.

"The attorney-client privilege protects the confidentiality of communications between attorney and client made for the purpose of obtaining legal advice." Genentech, Inc. v. U.S. Int'l Trade Comm'n, 122 F.3d 1409, 1415 (Fed. Cir. 1997). Courts determine whether it applies "on a case-by-case basis." In re Spalding Sports Worldwide, Inc., 203 F.3d 800, 805 (Fed. Cir. 2000) (citing Upjohn Co. v. United States, 449 U.S. 383, 396 (1981)). The work-product privilege, on the other hand, protects from discovery "the attorney's thought processes and legal recommendations." Genentech, 122 F.3d at 1415 (quoting Zenith Radio Corp. v. United States, 764 F.2d 1577, 1580 (Fed. Cir. 1985)). "In order to qualify as work product, the material . . . must come into existence because of the litigation or [because] some articulable claim has arisen that is likely to lead to litigation." Caremark, Inc. v. Affiliated Comput. Servs., Inc., 195 F.R.D. 610, 614 (N.D. Ill. 2000); see also Hickman v. Taylor, 329 U.S. 495, 497 (1947) (work-product privilege applies to "oral and written statements of witnesses, or other information" produced "in the course of preparation for possible litigation after a claim has arisen"). This qualified privilege may be overcome "upon a showing of 'substantial need' for the materials" if the party "cannot, without 'undue hardship,' obtain the 'substantial equivalent by other means.'" Jicarilla Apache Nation v. United States, 88 Fed. Cl. 1, 8 (2009) (quoting Rules of the Court of Federal Claims (RCFC) 26(b)(3)).

In its Motion to Compel, Kansas contended that the government failed to adequately describe the nature of the five documents for which it claimed only attorney-client and/or work-product privilege because "several of the documents . . . are undated" and because the government's "explanations of why . . . these documents are privileged amount to no more than boilerplate." Pl.'s Mem. at 21–22. After reviewing the privilege logs, however, the Court concluded that the government's description of the nature and contents of the documents over which it asserted only the attorney-client privilege showed with sufficient clarity why it asserted that privilege.[1] See, e.g., Def.'s Resp. Ex. D at 1 (describing a representative withheld document as a "[l]egal referral memorandum reflecting advice of counsel related to request for bond payment to the State of Alaska"). Moreover, because the privilege is absolute, the Court concluded that in camera review of those documents was not necessary.

On the other hand, the Court agreed with Kansas that the government's description of the document over which the government asserted both attorney-client and work-product privileges was less than helpful.[2] See id. (describing this document as a "[d]raft of [the government's] Notice of Proposed Rulemaking prepared in anticipation of litigation or trial"). Because the government had described the document as a draft of a "Notice of Proposed Rulemaking" it was not clear to the Court why the government had invoked the attorney-client and work-product privileges, but not the deliberative process privilege. Upon in camera review, the Court discovered that the "Notice of Proposed Rulemaking" referred to in the description is not the Notice of Proposed Rulemaking that

---

[1] The reference numbers for these documents in the appendix to Plaintiff's motion are 75, 76, 77, and 78.

[2] The reference number for this document is 79.

3

Treasury eventually published in the Federal Register; rather, it is a draft of the notice that the government filed as a pleading in this case to inform the Court that Treasury had recently published the proposed rule in the Federal Register. See ECF No. 36.

The attorney-client privilege does not apply to this document because it does not constitute a communication between attorney and client made for purposes of obtaining legal advice. But it is evident that the document is attorney work-product prepared in the course of litigation, and the Court concludes that Kansas has not made a showing of substantial (or even any) need for its disclosure. Accordingly, the Court concludes that the work product-privilege shields this document from disclosure.

## II.    Deliberative Process Privilege

### A.    Substantive Standards

The deliberative process privilege shields from public view "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 150 (1975) (quotation omitted). Because "officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news," the privilege serves to "enhance the quality of agency decisions by protecting open and frank discussion among those who make them within the Government." Dep't of Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8–9 (2001) (quotation and citations omitted); see also Sears, Robuck, 421 U.S. at 150–51 (observing that public disclosure of agency deliberations may inhibit "frank discussion of legal or policy matters"); United States v. Nixon, 418 U.S. 683, 705 (1974) ("[T]hose who expect public dissemination of their remarks may well temper candor with a concern for appearances . . . to the detriment of the decisionmaking process.").

The privilege, however, extends only to documents that are "both 'pre-decisional' and 'deliberative.'" Deseret Mgmt. Corp. v. United States, 76 Fed. Cl. 88, 95 (2007) (quoting Jade Trading, LLC v. United States, 65 Fed. Cl. 487, 493 (2007)). Thus, it does not apply to "factual or investigative material, except as necessary to avoid indirect revelation of the decision-making process." Pac. Gas & Elec. Co. v. United States, 70 Fed. Cl. 128, 134 (2006) (quoting Scott Paper Co. v. United States, 943 F. Supp. 489, 496 (E.D. Pa. 1996)).

Further, it is well established that the deliberative process privilege is a "qualified" privilege that is "subject to judicial oversight." Marriott Int'l Resorts, L.P. v. United States, 437 F.3d 1302, 1307 (Fed. Cir. 2006); see also Ford Motor Co. v. United States, 94 Fed. Cl. 211, 218 (2010); Pac. Gas, 70 Fed. Cl. at 134; Walsky Const. Co. v. United States, 20 Cl. Ct. 317, 320 (1990). Thus, in a given case, the privilege may be overcome if the moving party demonstrates that its evidentiary need for the documents outweighs the harm that disclosure would cause the non-moving party. Sikorsky Aircraft Corp. v. United States, 106 Fed. Cl. 571, 577 (2012); Dairyland Power Coop. v. United States, 77 Fed. Cl. 330, 337–38 (2007); First Heights Bank, FSB v. United States, 46 Fed. Cl. 312, 322 (2000); see also Marriott, 437 F.3d at 1307 ("[A] showing of compelling

need can overcome the qualified deliberative process privilege."). To determine whether the privilege should be overcome, the court may consider:

> (i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the seriousness of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable.

Dairyland Power, 77 Fed. Cl. at 338 (quoting In re Subpoena Served Upon Comptroller of Currency, 967 F.2d 630, 634 (D.C. Cir. 1992)); see also Sikorsky Aircraft, 106 Fed. Cl. at 579.

### B.     Procedural Requirements

To assert the deliberative process privilege, the government must meet several procedural requirements. First, the agency head (or her delegee) must personally consider the documents and "assert[] the privilege in the form of a declaration or affidavit." Pac. Gas, 70 Fed. Cl. at 134 n.8; see also Marriott, 437 F.3d at 1308 (holding that an agency head may delegate authority to assert the privilege "when carefully undertaken"). The purpose of this requirement is to ensure that the government asserts the privilege only after "'official[s] with expertise in the nature of the privilege claim and documents at issue' [] determine whether the public interest in confidentiality outweighs the public interest in disclosure." Pac. Gas, 70 Fed. Cl. at 144 (first alteration in original) (quoting Marriott, 437 F.3d at 1307).

In addition, the government must also "identif[y] and describe[]" the privileged documents or information, "stat[ing] with particularity what information is subject to the privilege" and providing "precise and certain reasons for maintaining the confidentiality of the [information]." Deseret Mgmt. Corp., 76 Fed. Cl. at 97 (quoting Walsky Const. Co., 20 Cl. Ct. at 320); see also RCFC 26(b)(5)(A)(ii) (when "withhold[ing] information otherwise discoverable by claiming that the information is privileged," a party must "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim").

Kansas argues that the government has not met these procedural requirements. First, it contends that the government was required to provide it with copies of Ms. Seaman's declarations at the same time it asserted the privilege.[3] See Pl.'s Reply in Supp. of Pl.'s Mot. to Compel (Pl.'s Reply) at 3, ECF No. 72. To support this argument, Kansas points to language in two Court of Federal Claims cases—Confidential Informant

---

[3] Kansas originally argued that the government had entirely failed to provide the required declarations, see Pl.'s Mem. at 10–11, but modified its argument after the government attached the declarations to its response to Kansas's motion.

5

59-05071 v. United States, 108 Fed. Cl. 121, 135–36 (2012), and Alpha I, L.P. ex rel. Sands v. United States, 83 Fed. Cl. 279, 290 (2008).

Those cases, however, are inapposite. Unlike in this case, the responsible agency officials in those cases had not executed the required declarations before the agency asserted the privilege. See Confidential Informant 59-05071, 108 Fed. Cl. at 135–36 (declaration executed "subsequent to and in response to plaintiff's [m]otion [to compel]"); Alpha I, 83 Fed. Cl. at 290 (no declaration produced). Thus, in this case, unlike those, the purpose animating the declaration requirement—to ensure that the government asserts the privilege only after a responsible agency official assesses whether "the public interest in confidentiality outweighs the public interest in disclosure"—was met. See Pac. Gas, 70 Fed. Cl. at 144 (quoting Marriott, 437 F.3d at 1307).

Next, Kansas contends that the government has not sufficiently "identified or described" the documents by stating with particularity what information is subject to the privilege. Having reviewed the government's privilege logs (both initial and supplemental), the Court concludes that the government's descriptions were sufficient to enable the Court to determine whether the privilege was applicable, and that, in any event, the Court has now conducted an in camera review of the documents withheld. See Cencast Servs., L.P. v. United States, 91 Fed. Cl. 496, 503 (2010) (holding that "defendant's privilege log—in combination with the in camera review requested by plaintiffs—is adequate to determine whether the elements of the privilege have been established."). Accordingly, the Court concludes that the government met the necessary procedural requirements for invoking the deliberative process privilege.

### C. Whether the Privilege Applies to the Information Contained in the Withheld Documents

As mentioned above, the deliberative process privilege applies only to "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated," Sears, Roebuck, 421 U.S. at 150, and thus does not cover "factual or investigative material, except as necessary to avoid indirect revelation of the decision-making process." Pac. Gas, 70 Fed. Cl. at 134 (quoting Scott Paper Co., 943 F. Supp. at 496). Based on the descriptions in the government's privilege logs and on its in camera review, the Court has determined that the government properly asserted the privilege over the subject matter found in the seventy-four withheld documents (or the withheld portions of those documents).

As the government explained in a May 19, 2016 email to Plaintiff's counsel, many of the withheld documents fall within just a few categories. See Pl.'s Mem. Ex. 11. Thus, twelve of the documents are internal Treasury memoranda related to publishing the

6

notice of proposed rulemaking in the Federal Register.[4] Another seven documents are similar memoranda related to publishing the final rule.[5] These nineteen documents are quintessential examples of internal recommendations and deliberations regarding agency decisions—namely, whether to publish the proposed and final rules.

Twelve more documents are drafts of the notice of proposed rulemaking itself.[6] Thirteen are drafts of the final rule.[7] And one is a draft of a portion of the final rule.[8] The government properly asserted the privilege over these twenty-six documents, which by their nature comprise the process by which Treasury arrived at the language of the proposed and final rules it ultimately published.

In addition, fifteen of the documents are drafts of an internal memorandum regarding Treasury's decision on Kansas's request to redeem the escheated bonds.[9] See id. at 2–3. Like the memoranda related to publishing the proposed and final rules, these documents constitute pre-decisional recommendations and deliberations regarding how to respond to Kansas's request, and are thus covered by the privilege. Two other documents are drafts of the decision itself.[10] As with the drafts of the proposed and final rules, these documents are part of the process by which Treasury arrived at its decision on Kansas's redemption request. Thus, Treasury appropriately asserted the privilege over these seventeen documents.

Of the remaining twelve documents, four are internal communications regarding the contents of Treasury's website.[11] The privilege also applies to these documents because they reflect recommendations and deliberations about the website's contents. Four more documents are drafts or memoranda regarding Treasury's communications

---

[4] The reference numbers for these twelve documents in the appendix to Plaintiff's motion are 23, 24, 25, 26, 27, 28, 29, 30, 31, 33, 37, and 57.

[5] The reference numbers for these seven documents are 5, 6, 7, 8, 14, 15, and 16.

[6] The reference numbers for these twelve documents are 32, 34, 35, 36, 38, 39, 40, 41, 58, 59, 60, and 61.

[7] The reference numbers for these thirteen documents are 9, 10, 11, 12, 13, 17, 42, 63, 64, 65, 66, 69, and 70.

[8] The reference number for this document is 71.

[9] The reference numbers for these fifteen documents are 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 72, 73, and 74.

[10] The reference numbers for these two documents are 21 and 22.

[11] The reference numbers for these four documents are 18, 19, 20, and 43.

strategy upon the release of the final rule.[12] These, too, contain recommendations and deliberations about Treasury's policies, and are thus shielded by the privilege.

Finally, four of the documents are presentations, portions of presentations, and memoranda containing information about strategies and tools Treasury might adopt in the course of addressing unredeemed debt or otherwise administering the savings bond program.[13] These documents are advisory in nature and focus on decisions that Treasury has not yet made, but may make in the future. Thus, the deliberative process privilege applies to these documents as well.

In sum, the Court concludes that the deliberative process privilege applies to each of the seventy-four documents over which the government has asserted it.

### D.      Whether Kansas's Need for the Documents Outweighs the Harm That Disclosure Would Cause

The Court also concludes that the deliberative process privilege should not be overcome in this case. First, the Court is not persuaded that the contents of the documents are central (or even relevant) to the legal issues the Court must resolve in this case. As the Court explained in its August 20, 2015 ruling on the government's first motion to dismiss, the savings bonds at issue in this case are contracts between the United States and the owners of the bonds, and Treasury's regulations constitute the terms of those contracts. See 123 Fed. Cl. 74, 81 (2015). Thus, the success of Plaintiff's claims is bound up in the interpretation of those regulations. See id. at 82–83. And while courts "may rely on various tools" in interpreting regulations, including "official agency interpretations," they may not consider the "unpublished opinions of agency staff" or other unofficial pronouncements. See United States v. Farley, 11 F.3d 1385, 1390 (7th Cir. 1993); cf. Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 420 (1971) ("[I]nquiry into the mental processes of administrative decisionmakers is usually to be avoided."); Int'l Paper Co. v. Fed. Power Comm'n, 438 F.2d 1349, 1358 (2d Cir. 1971) ("[T]he views of individual members of the [agency's] staff are not legally germane, either individually or collectively to the actual making of final orders."), cert. denied, 404 U.S. 827 (1971).

As noted above, many of the withheld documents are either drafts of Treasury's revised savings bond regulation or memoranda recommending the adoption of the revised regulation. Others are drafts of Treasury's decision to deny Kansas's redemption claims or internal analyses related to that decision. One is a slide deck that concerns potential upgrades to Treasury's technology that might enable bondholders to secure information more efficiently. As such, the contents of these documents do not inform the Court's interpretation of the savings bond regulations. Rather, to the extent that the Court's interpretation is informed by Treasury's pronouncements and decisions, the Court must

---

[12] The reference numbers for these four documents are 44, 62, 67, and 68.

[13] The reference numbers for these four documents are 1, 2, 3, and 4.

rely solely on the pronouncements and decisions themselves, not draft documents. And the Court expects that the non-privileged materials Kansas obtains through discovery about Treasury's final policies, procedures, and past practices will supply it with any such pronouncements and decisions that may exist.

In sum, in camera review confirms that the withheld documents are not especially relevant to the legal bases for the Court's decision in this case, and the Court believes that other, non-privileged evidence is available to prove Kansas's claims. Thus, Kansas's evidentiary need for the documents is low. On the other hand, the government has identified significant harms that would flow from disclosure of the agency's draft documents and deliberations. See Def.'s Resp. Ex. C ¶¶ 10–12 (explaining that disclosure of the documents might (among other things) interfere with the agency's ability "to craft policies to manage the savings bond program;" make it "more difficult for [the] Fiscal Service to carefully consider the various matters of financial policy that arise in the implementation and management of the savings bond program;" and create a "chilling effect on the free exchange of opinions and ideas of Fiscal Service officials and staff involved in future efforts to formulate policy"). Accordingly, the Court concludes that Kansas's need for the documents does not outweigh the harms that would flow from disclosure, and thus that the deliberative process privilege should not be overcome in this case.

## CONCLUSION

For the reasons given above, Kansas's motion to compel is **DENIED**. Each side shall bear its own costs. See RCFC 37(a)(5)(B) (court must not order payment of costs where motion to compel denied where motion is substantially justified or other circumstances make an award of costs unjust).

The parties shall file a joint status report within 14 days from the date of this order, proposing a new schedule to govern further proceedings in this case.

**IT IS SO ORDERED.**

 /s/ Elaine D. Kaplan
ELAINE D. KAPLAN
Judge